J-S81040-18

2019 PA Super 83

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN SMITH | : | |
| | : | |
| Appellant | : | No. 554 MDA 2018 |

Appeal from the Judgment of Sentence February 20, 2018
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0000119-2017


BEFORE:   STABILE, J., DUBOW, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED MARCH 20, 2019**

Appellant John Smith appeals the judgment of sentence entered by the Court of Common Pleas of Lackawanna County after a jury convicted Appellant of indecent assault of a minor less than 13 years of age, corruption of minors, simple assault, and endangering the welfare of a child (EWOC).[1]  After careful review, we affirm.

The lower court summarized the factual background of this case as follows:

> The charges in this case arose between September 1, 2016 and January 2017.  The victim in this case began taking karate lessons at [Appellant's] karate studio when he was four or five years old.  In September of 2016, the victim, who was then nine years old, began taking private archery lessons from [Appellant] as well.  During these lessons, [Appellant] played truth or dare with the child.  On some occasions when the child chose dare,

---

[1] 18 Pa.C.S.A. §§ 3126(a)(7), 6301(a)(1)(ii), 2701(a)(1), and 4304(a)(1), respectively.  The charges of indecent assault, corruption of minors, and EWOC were all graded as third-degree felonies.

---

\* Former Justice specially assigned to the Superior Court.

[Appellant] had him remove all of his clothing and when the victim was naked, [Appellant] spanked his bare buttocks while he climbed a metal pole. When [Appellant] spanked the child, he gave the child the option of choosing 10 hard or 50 soft spankings, but told him that if he chose hard, it would make him tougher. This occurred numerous times. [Appellant] told the victim not to tell his parents because they were not a part of the karate brotherhood.

Trial Court Opinion, 6/6/18, at 1-2.

On November 14, 2017, a jury convicted Appellant of the aforementioned charges. On February 20, 2018, the trial court sentenced Appellant to one to three years' imprisonment for the indecent assault charge, 1½ to 4 years' imprisonment for the corruption of minors charge, 6 months to 2 years' imprisonment for the simple assault charge, and 3½ to 7 years' imprisonment for the EWOC charge. As all sentences were consecutive, Appellant received an aggregate sentence of 6½ to 16 years' imprisonment.

On February 27, 2018, Appellant filed a post-sentence motion, which the lower court subsequently denied. Appellant filed a timely appeal and complied with the lower court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues on appeal:

1. Did the Commonwealth fail to present sufficient evidence to establish, beyond a reasonable doubt, that Appellant caused bodily injury, as defined in 18 Pa.C.S.A. § 2301, or possessed the *mens rea* on the charge of simple assault?

2. Did the trial court err or abuse its discretion in admitting the testimony of Ms. Fortney in finding her qualified to testify as an expert in the dynamics of and a victim's response to sexual abuse, over the objection of counsel on her qualifications and to testify in a manner which included an opinion or bolstered

the credibility of the complainant, in violation [of] 42 Pa.C.S.A. § 5920(b)(3)?

3. Did the trial court err or abuse its discretion in striking juror #1, after the jury had been sworn and impaneled and testimony had commenced, based upon an equivocal and non-disqualifying juvenile adjudication?

4. Did the trial court err or abuse its discretion in restricting the direct examination of a witness, Lisa Kiernan, on whether, as a parent, she observed anything regarding the karate classes or conduct of Appellant which caused her to be suspicious?

5. Did the trial court impose an illegal sentence on the charge of corruption of minors, graded as a felony of the third degree, where the jury was not instructed on the element of "course of conduct" and could not find all elements of the offense to be proven beyond a reasonable doubt?

6. Did the trial court abuse its discretion by imposing manifestly excessive sentences within and, also, beyond the aggravated range of the Pennsylvania Sentencing Guidelines, by failing to consider the relevant sentencing criteria, considering factors already accounted for in the charged crimes and the Pennsylvania Sentencing Code and Guidelines, considering inaccurate information, failing to consider mitigating circumstances and, as a result, failing to place sufficient reasons on the record to justify the sentences imposed?

Appellant's Brief, at 3.

We first review Appellant's challenges to the sufficiency of the evidence supporting his simple assault conviction. Our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be

resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact [,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Davison*, 177 A.3d 955, 957 (Pa.Super. 2018) (quoting

*Commonwealth v. Talbert*, 129 A.3d 536, 542–43 (Pa.Super. 2015)).

Appellant was charged under Section 2701(a)(1) of the Crimes Code, which provides that a person may be convicted of simple assault if he "attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). Specifically, Appellant claims there was insufficient evidence to show he caused the victim bodily injury.[2]

This Court set forth a thorough discussion of the definition of "bodily injury" in *Commonwealth v. Marti*, 779 A.2d 1177 (Pa.Super. 2001):

In [*Commonwealth v.*] *Wertelet*, [696 A.2d 206 (Pa.Super. 1997),] we noted that the Crimes Code definition of bodily injury as "impairment of physical condition or substantial pain," 18 Pa.C.S.A. § 2301, "is worded rather generally and does not provide a great deal of guidance." *Wertelet*, 696 A.2d at 210. We further recognized the lack of cases attempting to define the term. *Id.* In attempting to define the term, the panel

---

[2] We note that the trial court instructed the jury that it had to find Appellant caused bodily injury to the victim to convict Appellant of simple assault. N.T. Trial, 11/14/17 (p.m.), at 60-61. The trial court did not inform the jury that it could convict Appellant of simple assault if it found Appellant *attempted to cause* bodily injury under 18 Pa.C.S.A. § 2701(a)(1). However, as discussed *infra*, the Commonwealth presented sufficient evidence to show Appellant caused the victim bodily injury.

- 4 -

compared Wertelet's actions with those of the defendants in the cases of **Commonwealth v. Kirkwood**, 360 Pa.Super. 270, 520 A.2d 451 (1987) and **Interest of J.L.,** 327 Pa.Super. 175, 475 A.2d 156 (1984). In **Kirkwood**, the defendant was charged with simple assault for aggressively fast dancing with a woman. The victim testified that she had pleaded with Kirkwood to stop because he was hurting her, but that he had continued to swing her until her husband intervened. She said the incident lasted approximately forty seconds and left her with bruises and cut marks on her arms. As a result, she testified she suffered pain in her arms and her right knee for a short period of time thereafter. We concluded these facts did not constitute sufficient bodily injury to sustain a conviction of a simple assault, in that "temporary aches and pains brought about by strenuous, even violent, dancing are an inadequate basis for imposing criminal liability upon a dance partner for assault." **Kirkwood**, 520 A.2d at 454. We also opined "the assault section of the Crimes Code was intended to protect and preserve one's physical well-being and was not intended to prevent temporary hurts resulting from trivial contacts which are a customary part of modern day living." **Id.** In **Interest of J.L., supra**, we reversed the adjudication of delinquency of a sixteen-year-old for simple assault where she elbowed her nephew to push him away. We noted "it is difficult to attach criminality to the pushing, shoving, slapping, elbowing, hair-pulling, perhaps even punching and kicking, that frequently occur between siblings or other members of the same family." **Id.** at 157.

Consequently, the **Wertelet** panel found the actions in **Kirkwood** and **J.L.** were "on par with the nature of the affront committed here by [Wertelet]." The panel reasoned as follows:

> There is no evidence that appellant reared back and kicked Trooper Funk as hard as she could. Indeed, she kicked him with the back of her heel as she was flailing about and squirming while the troopers attempted to handcuff her. Trooper Funk was not seriously impaired by the kicks, he was able to continue working, and he did not report even any bruising or swelling. Trooper Funk's characterization of the pain as similar to 'bumping your shin on a coffee table' aligns the encounter with those described above and does not fall within the general connotation of the term 'injury.'

**Wertelet**, 696 A.2d at 212, 213 (footnote omitted).

***

We find further support for our conclusion by examination of the cases defining bodily injury in the context of a simple assault. ***In the Interest of M.H.,*** 758 A.2d 1249 (Pa.Super. 2000), *appeal denied,* 564 Pa. 735, 766 A.2d 1250 (2001), we affirmed an adjudication of delinquency for simple assault involving the reckless infliction of bodily injury to a high school teacher's aide. The evidence therein demonstrated M.H. aggressively grabbed the victim's arm and pushed her up against a wall causing bruises on her arm that lasted several days. The injury did not require medical treatment or cause the victim to miss any work. On appeal, M.H. argued the evidence was insufficient to prove simple assault because the victim's injury did not constitute "bodily injury" under 18 Pa.C.S.A. § 2701(a)(1). After analyzing the rationale of ***Wertelet***, we rejected this argument noting:

> We are not willing to view this incident as a 'temporary hurt' resulting from a 'trivial contact.' It cannot be viewed as contact incident to a struggle as in ***Wertelet,*** which the officer there described as akin to bumping his shin. It cannot be viewed in any sense as social contact as was the, albeit aggressive, dancing in ***Kirkwood.*** Nor can we view this incident as the type of noncriminal contact resulting from family stress and rivalries as in ***Interest of J.L.*** In short, we do not consider M.H.'s conduct in any way a 'customary part of modern day living.' ***Kirkwood,*** 520 A.2d at 454.

***In the Interest of M.H.,*** 758 A.2d at 1252. ***See***, ***e.g.,*** ***Commonwealth v. Jorgenson,*** 341 Pa.Super. 550, 492 A.2d 2 (1985) *rev. on other grounds,* 512 Pa. 601, 517 A.2d 1287 (1986) (stating "[a] jury may infer that striking a person across the face causes pain;" even if there is no testimony of pain); ***Commonwealth v. Adams,*** 333 Pa.Super. 312, 482 A.2d 583 (1984) (affirming conviction for simple assault where victim was struck in the head with an object hard enough to almost knock her unconscious); ***Commonwealth v. Richardson,*** 431 Pa.Super. 496, 636 A.2d 1195, 1196 (1994) (holding testimony that appellant's punch broke officer's glasses and caused pain for a few days was sufficient to sustain finding of actual bodily injury); ***Commonwealth v. Ogin,*** 373 Pa.Super. 116, 540 A.2d 549 (1988) (*en banc*), *appeal denied,* 521 Pa. 611, 557 A.2d 343 (1989) (finding substantial pain may be inferred from the

circumstances surrounding the physical force used, even in the absence of significant injury).

*Marti*, 779 A.2d at 1181-82. Given our precedent in *In the Interest of M.H*, *Jorgenson*, *Adams*, *Richardson*, and *Ogin*, this Court has upheld convictions for simple assault where the assaultive behavior in question is more clearly criminal in nature.

Likewise, in this case, the prosecution presented sufficient evidence to sustain a finding that Appellant caused the victim bodily injury with his behavior that was criminal in nature. The evidence established that Appellant had his nine-year-old karate student take his clothes off and kneel over Appellant's bent knee. The victim testified that Appellant hit his bare buttocks, sometimes up to 50 times, causing him to cry. It was reasonable for the jury to infer that Appellant caused the victim pain as his spankings made the victim cry and were so hard that the victim asked if Appellant's spankings had left red marks on his backside. The victim also indicated that Appellant gave him these spankings on multiple occasions.

Despite Appellant's reliance on *Kirkwood,* the evidence shows that the victim sustained bodily injury in the course of Appellant's criminal conduct, which was neither "trivial in nature," nor "noncriminal contact resulting from family stress and rivalries," nor a "customary part of modern day living." *Kirkwood, supra*; *Interest of J.L.*, *supra*.

We are not persuaded by Appellant's claim that the Commonwealth was required to present evidence that the victim complained of pain, sustained marks or bruises, or was in anyway impaired by Appellant's conduct. This

Court has emphasized that "our caselaw does not require a victim to quantify the precise level of the pain she sustained to establish that [he or] she sustained bodily injury." **Davison**, 177 A.3d at 959. Accordingly, we find the circumstances in this case supported the jury's verdict on the charge of simple assault.[3]

Second, Appellant argues that the trial court abused its discretion with respect to prosecution expert witness Ms. Janine Fortney on two grounds: (1) claiming Ms. Fortney was not qualified to testify as an expert in the dynamics of sexual abuse and victim responses to sexual abuse and (2) arguing Ms. Fortney improperly bolstered the credibility of the child victim.

In reviewing a challenge to the trial court's discretion in allowing expert testimony, we are guided by the following principles:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. The standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine. A witness does not need formal education

---

[3] In Appellant's issue statement of his appellate brief, he also claims the Commonwealth failed to show he demonstrated the *mens rea* necessary for a simple assault conviction. However, Appellant did not provide any further development of this claim within his brief. As a result, this issue is waived. **Commonwealth v. Patterson**, 180 A.3d 1217, 1229 (Pa.Super. 2018) (quoting **Commonwealth v. Johnson**, 604 Pa. 176, 985 A.2d 915, 924 (2009) (finding that "[a]ny claim for which an appellant fails to include "citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review" is waived)).

on the subject matter of the testimony, and may be qualified to render an expert opinion based on training and experience.

***Commonwealth. v. Serge***, 837 A.2d 1255, 1260 (Pa.Super. 2003), *aff'd*, 586 Pa. 671, 896 A.2d 1170 (2006) (citations omitted).

"Expert testimony is permitted as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman. Conversely, expert testimony is not admissible where the issue involves a matter of common knowledge." ***Commonwealth v. Carter***, 111 A.3d 1221, 1222 (Pa.Super. 2015) (citations omitted). Expert testimony in sexual abuse cases is governed by 42 Pa.C.S.A. § 5920, which provides:

**§ 5920. Expert testimony in certain criminal proceedings**

**(a) Scope.--**This section applies to all of the following:

(1) A criminal proceeding for an offense for which registration is required under Subchapter H of Chapter 97 (relating to registration of sexual offenders).

(2) A criminal proceeding for an offense under 18 Pa.C.S. Ch. 31 (relating to sexual offenses).

**(b) Qualifications and use of experts.—**

(1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S.A. § 5920 (footnote omitted).

In this case, the Commonwealth sought to qualify Ms. Janine Fortney as an expert witness on the dynamics of sexual violence and victim responses to sexual violence pursuant to Section 5920(b)(1). Ms. Fortney earned Bachelor's and Master's degrees in social work and is certified in Trauma Focused Cognitive Behavior Therapy. She serves at the director of the Children's Center of Susquehanna and Wyoming Counties, where she is the administrator of children's advocacy programs and also serves as a forensic interviewer of children who have suffered abuse. Ms. Fortney testified to her twenty years of experience providing therapy and estimated that she has treated over 800 individuals, 300 of whom were child sexual abuse victims. As such, we conclude that the trial court did not abuse its discretion when it qualified Ms. Fortney as an expert witness in the dynamics of sexual violence and victim responses to sexual abuse as her education and experience gave her a reasonable pretension to specialized knowledge in this area.

We reject Appellant's argument that Ms. Fortney was unqualified to testify as an expert on the dynamics of sexual violence and victim responses

to sexual violence based on Appellant's claim that Ms. Fortney "could not enumerate how many [of her child clients] had actually been abused and [could not] expound on why they differ from adults in how they reported abuse." Appellant's Brief, at 21. Further, Appellant asserts that Ms. Fortney "could not testify on any statistical analysis or her own experience regarding the margin of error about her theories or explanations on how children are impacted and may react, respond, and disclose sexual abuse." Appellant's Brief, at 21. These questions do not relate to Ms. Fortney's qualifications, but rather, the weight the jury was free to give to her opinion. As we will not disturb the jury's credibility findings, Appellant's claim is meritless.

In addition, there is no evidence in the record to support Appellant's assertion that Ms. Fortney improperly bolstered the victim's credibility. Our Supreme Court has held that "[e]xpert testimony on relevant psychological factors … does not directly speak to whether a particular witness was untrustworthy, or even unreliable, as the expert is not rendering an opinion on whether a specific witness [testified accurately.] … Rather, such testimony teaches—it provides jurors with education by which they assess for themselves the witness's credibility." *Commonwealth v. Walker*, 625 Pa. 450, 480, 92 A.3d 766, 784 (2014). Although the *Walker* Court was discussing the admissibility of expert testimony with respect to witness identification, the aforementioned principle is applicable to expert testimony on the dynamics of sexual violence and victim responses to sexual violence.

In this case, Ms. Fortney testified that she had never met the victim and had not reviewed any of his records. Consistently with her expert report, Ms. Fortney only testified in general terms about the dynamics of sexual violence and victim responses to sexual violence and did not discuss any particular victim. She explained that each child victim may process abuse differently, but generally will experience heightened emotion, fear, confusion, guilt, and shame. Recognizing that child victims are often abused by someone they know and trust, Ms. Fortney also indicated that victims often have difficulty in perceiving whether they are being abused before they realize what conduct is right and wrong.

Ms. Fortney continued to explain that children may not disclose their abuse in the same way; child victims may be unwilling or reluctant to share details of abuse by a known perpetrator with whom they share a bond. Ms. Fortney acknowledged that children may only disclose part of the abuse and later may share additional details of abuse. Moreover, when asked if children give the exact details each time they give their account of abuse, Ms. Fortney indicated that it would be hard for anyone to tell a story with the same words multiple times.

Appellant's reliance on the Supreme Court precedent in **Commonwealth v. Maconeghy**, 642 Pa. 770, 775, 171 A.3d 707, 709–10 (2017) is unavailing. The Supreme Court ruled that an expert gave inadmissible testimony when he opined that the particular child witness had been sexually abused, based on her statements to that effect. The Supreme

Court affirmed this Court's conclusion that the expert had improperly opined as to whether the victim was telling the truth and "intruded into the jury's function to assess the credibility of witnesses." *Id*. at 775, 171 A.3d at 709–10. *See also Carter*, 111 A.3d at 1223 (finding expert's testimony admissible when she discussed in general terms a child victim's response to sexual abuse and "did not offer any opinion regarding the victim's credibility").

In this case, Ms. Fortney did not assess the victim's credibility or discuss how this particular victim reacted to being abused. Instead, Ms. Fortney spoke generally about the dynamics of sexual violence and victim responses to sexual violence, which provided a background against which the jury could assess the victim's credibility. Accordingly, the trial court did not err in allowing this expert testimony.

Third, Appellant argues that the trial court improperly discharged Juror #1 after Appellant's trial had commenced. The Commonwealth moved to strike the juror after discovering the juror had been adjudicated delinquent for indecent assault as a juvenile. Our standard of review is as follows:

> "The decision to discharge a juror is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." **Commonwealth v. Carter**, 537 Pa. 233, 643 A.2d 61, 70 (1994). "This discretion exists **even after the jury has been [e]mpanelled and the juror sworn**." *Id.* (emphasis added). Our Supreme Court explained that "a finding regarding a venireman's impartiality 'is based upon determinations of demeanor and credibility that are peculiarly within a trial [court]'s province. ... [Its] predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record.'" [**Commonwealth v.**] **Smith**, 540 A.2d [246, 256 (Pa.Super. 1998)] (quoting **Wainwright v. Witt**,

469 U.S. 412, 428–29, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)). It is the appellant's burden to show that the jury was not impartial. ***Commonwealth v. Noel***, 629 Pa. 100, 104 A.3d 1156, 1169 (2014).

\*\*\*

In ***Commonwealth v. Briggs***, our Supreme Court set forth the standard for prospective juror disqualification:

> The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor. ... It must be determined whether any biases or prejudices can be put aside on proper instruction of the court. ... A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions.

608 Pa. 430, 12 A.3d 291, 333 (2011) (quoting ***Commonwealth v. Cox***, 603 Pa. 223, 983 A.2d 666, 682 (2009)).

***Commonwealth v. Rush***, 162 A.3d 530, 537 (Pa.Super. 2017) (emphasis in original).

In this case, the trial court recognized that a citizen may be disqualified from serving as a juror if he "has been convicted of a crime punishable by imprisonment for more than one year and has not been granted a pardon or amnesty therefor." 42 Pa.C.S.A. § 4502(a)(3). The trial court reasoned that Section 4502 would not automatically disqualify the juror as his *juvenile* adjudication for indecent assault would not be punishable by a sentence of imprisonment of more than one year.

Nonetheless, the trial court found it problematic that Juror #1 had a juvenile adjudication for indecent assault as Appellant was on trial for indecent assault in this case. This fact was not discovered during the jury selection process as the juror questionnaire did not require the juror to reveal that he had the juvenile adjudication. It is reasonable for the trial court to presume a likelihood of prejudice given that Juror #1 and Appellant shared the similar experience of having to defend themselves against allegations of indecent assault. We conclude that the trial court properly exercised its discretion to discharge Juror #1 on this basis.

Fourth, Appellant argues that the trial court abused its discretion in restricting the direct examination of defense witness, Lisa Kiernan, who was the parent of another student at Appellant's karate school. Ms. Kiernan testified that she observed some of her son's karate classes and was never dissuaded from doing so by Appellant. Defense counsel asked Ms. Kiernan whether she observed "anything which caused [her] to have any suspicions." N.T. Trial, 11/14/17 (a.m.), at 88. The trial court sustained the Commonwealth's objection to this line of questioning.

It is well-established that "[a] trial court may exclude evidence that is irrelevant to the issues presented. Evidence is not relevant 'unless the inference sought to be raised by it bears upon a matter in issue and renders the desired inference more probable than it would be without the evidence.'" **Commonwealth v. Elliott**, 622 Pa. 236, 288, 80 A.3d 415, 446–47 (2013) (quoting **Commonwealth v. Vallejo**, 532 Pa. 558, 616 A.2d 974, 976

- 15 -

(1992)). In this case, it was proper for the trial court to refuse to allow defense counsel to evaluate whether another parent had suspicions about Appellant's interactions with her child, as such evidence has no bearing on whether Appellant assaulted the child victim in this case. As such, we cannot find the trial court abused its discretion in precluding this irrelevant testimony.

Fifth, Appellant claims the trial court imposed an illegal sentence for the charge of corruption of minors as a felony of the third degree as he alleges that the trial court failed to properly instruct the jury as to the "course of conduct" element of the offense, which raised the grading of the charge from a first-degree misdemeanor to a third-degree felony. Specifically, Appellant argues that "other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Commonwealth v. Graham*, 799 A.2d 831, 833 (Pa.Super. 2002) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63 (2000)).[4]

Section 6301 defines the offense of corruption of minors and also addresses the grading of the offense as follows:

> (1)(i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or

---

[4] We note that the Supreme Court subsequently held in *Alleyne v. United States,* 570 U.S. 99, 111-112, 133 S.Ct. 2151, 2160 (2013) that "*Apprendi* applies with equal force to facts increasing [a] mandatory minimum."

encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

(ii) Whoever, being of the age of 18 years and upwards*, by any course of conduct* in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 **commits a felony of the third degree**.

18 Pa.C.S.A. §6301(a)(1) (emphasis added). Thus, with respect to a charge of corruption of minors as a third-degree felony, the trial court must instruct the jury that the Commonwealth must prove that Appellant engaged in a "course of conduct." 18 Pa.C.S.A. § 6301(a)(1)(ii). If the Commonwealth cannot show a course of conduct, the corruption of minors offense is graded as a first-degree misdemeanor under 18 Pa.C.S.A. § 6301(a)(1)(i).

As an initial matter, we note that Appellant did not object to the jury instruction on the offense of corruption of minors. Our rules of appellate procedure provide that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). In addition, to properly preserve a challenge to the adequacy or omission of a particular jury instruction, the defendant must make a specific objection to the jury instruction at trial. **Commonwealth v. Hitcho**, 633 Pa. 51, 93, 123 A.3d 731, 756 (2015) (citations omitted); Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of"); Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the

- 17 -

charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate").

However, this Court has treated a similar challenge to the grading of an offense as raising a question as to the legality of the sentence, which is a non-waivable issue. ***Commonwealth v. Popow***, 844 A.2d 13, 16 (Pa.Super. 2004). Nevertheless, even assuming *arguendo* that Appellant's claim constitutes a non-waivable challenge to the legality of his sentence, his argument is meritless.

In ***Popow***, the appellant argued that he was improperly sentenced for EWOC as a third-degree felony because the jury was never specifically instructed to make a finding on "course of conduct." Similar to the crime of corruption of minors, a charge of EWOC constitutes a third-degree felony when the defendant engages in a "course of conduct" of endangering the welfare of a child. 18 Pa.C.S.A. § 4304(b)(1)(ii). The ***Popow*** Court held the following:

> in order to be graded as a third-degree felony, the Commonwealth must allege in the information and present evidence at trial of the additional factor of "course of conduct," and the jury must be instructed on such. Here, "course of conduct" is not an element of the offense of endangering the welfare of a child, but it is an additional fact, a jury question, that impacts the grading of the offense. We cannot merely assume the jury found this additional fact when no evidence of it was presented at trial and no mention of it was made in the jury's charge.

***Id***. at 18. As a result, this Court found that the trial court had improperly graded the EWOC offense as a felony of the third degree as the criminal information and the prosecution's case at trial did not set forth allegations of

evidence of a course of conduct. Moreover, the **Popow** court reasoned that it could not conclude that the jury understood that they were making a finding on the course of conduct factor without an appropriate instruction.

We find the instant case distinguishable. The criminal information charged Appellant with corruption of minors as a third-degree felony alleging Appellant engaged in a course of conduct on multiple occasions of using games to dare the victim to undress and do various actions, like climb a metal pole, jump on a desk, and submit to Appellant's spankings and touches. Consistent with these charges, the Commonwealth presented evidence at trial that Appellant engaged in the aforementioned actions on multiple occasions.

We also find that the trial court gave a proper jury instruction on the corruption of minors charge. In reviewing the adequacy of the trial court's instruction, we consider the following principles:

> In reviewing a challenge to a jury instruction, the entire charge is considered, not merely discrete portions thereof. The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury. It is the policy of this Court to give our trial courts latitude and discretion in phrasing instructions.

**Commonwealth v. Johnson**, 630 Pa. 493, 552, 107 A.3d 52, 87–88 (2014) (citing **Commonwealth v. Eichinger**, 591 Pa. 1, 915 A.2d 1122, 1138 (2007)).

In this case, the trial court's specific instruction on the corruption of minors charge was as follows:

[Appellant] has been charged with corrupting a minor. To find [Appellant] guilty of this offense, you must find that each of the following elements has been proved beyond a reasonable doubt. First, that the [Appellant] was 18 years of age or older at the time of the incident giving rise to the charge. Second, that [the victim] was under the age of 18 at the time. And, third, that [Appellant] corrupted or tended to corrupt the morals of [the victim] by the following alleged conducts: That the said [Appellant] did dare a 9 year old boy, [the victim] to become unclothed and did engage in spanking him on his bare buttocks **on numerous occasions**. It is not necessary for the Commonwealth to prove that the minor's morals were actually corrupted or changed in any way. It is sufficient that you find beyond a reasonable doubt that [Appellant's] **acts** tended to corrupt the morals of a minor. The courts of Pennsylvania have held that actions that tend to corrupt the morals of a minor are those that would offend the common sense of the community and the sense of decency, propriety and morality, which most people entertain.

To summarize, **if you find beyond a reasonable doubt that [Appellant] did the acts alleged**, **that those acts corrupted or tended to corrupt the morals of a minor**, that he, [Appellant] was over 18 years of age, then you must find [Appellant] guilty of the charge of corruption of a minor. And if you find that any of those elements have not been proven beyond a reasonable doubt, the you must find him not guilty of this charge.

N.T. 11/14/18, at 58-60 (emphasis added).

This instruction, which required the jury to find that Appellant committed acts on "numerous occasions" that corrupted or tended to corrupt the victim's morals is consistent with the "course of conduct" requirement, which this Court has defined as "multiple acts over time" or "a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." **Commonwealth v. Kelly**, 102 A.3d 1025 (Pa.Super. 2014). Accordingly, when we view the instructions in their

entirety, we find the trial court's instructions clearly and accurately presented to the jury the law with respect to his corruption of minors charge.

Sixth, Appellant argues that the trial court abused its discretion by imposing manifestly excessive sentences, which fell within and beyond the aggravated range of the Pennsylvania Sentencing Guidelines. Appellant specifically contends that the trial court failed to consider relevant sentencing criteria and mitigating circumstances, considered impermissible factors in imposing its sentence, and neglected to place sufficient reasons on the record to justify the sentences imposed.

These claims constitute challenges to the discretionary aspects of Appellant's sentence. The following principles apply to our consideration of these arguments:

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

> When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial

- 21 -

court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases.

***Commonwealth v. Manivannan***, 186 A.3d 472, 489 (Pa.Super. 2018) (quotation marks, some citations, and bold omitted).

Although Appellant filed a timely notice of appeal, the only claim he preserved in his post-sentence motion and in the Rule 2119(f) statement in his appellate brief was his claim that the trial court failed to consider mitigating circumstances. Appellant claims for the first time on appeal that the trial court failed to consider relevant sentencing criteria, considered impermissible factors in imposing its sentence, and did not place sufficient reasons on the record for its sentence. As noted above, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302. Moreover, "issues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the claim during the sentencing proceedings." ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa.Super. 2003). As Appellant's failure to properly raise these claims denied the sentencing court an opportunity to reconsider his sentence based on Appellant's arguments, these particular issues are waived on appeal.

Thus, we proceed to review Appellant's claim that the trial court did not consider mitigating circumstances in imposing his sentence. We must assess whether this claim is a substantial question meriting our discretionary review.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent

with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Id.* (quotation marks and some citations omitted). A claim that the trial court erred by "imposing an aggravated range sentence without consideration of mitigating circumstances raises a substantial question." ***Commonwealth v. Felmlee***, 828 A.2d 1105, 1107 (Pa.Super. 2003).

In reviewing a challenge to the sentencing court's discretion, we are cognizant of the following principles:

> We review the trial court's sentencing scheme for abuse of discretion. ***Commonwealth v. Walls***, 592 Pa. 557, 926 A.2d 957, 961 (2007). "[A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." ***Id.***

> Section 9781(c) of the Sentencing Code directs this Court to vacate a sentence and remand to the sentencing court if "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). Likewise, § 9781(d) governs our review of the record:

>> **(d) Review of record.—**In reviewing the record the appellate court shall have regard for:

>>> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

>>> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

>>> (3) The findings upon which the sentence was based.

>>> (4) The guidelines promulgated by the commission.

> 42 Pa.C.S.A. § 9781(d).

Our Supreme Court has addressed the § 9781(c)(3) "unreasonable" inquiry as follows:

What makes a sentence "unreasonable" is not defined in the statute. Generally speaking, "unreasonable" commonly connotes a decision that is "irrational" or "not guided by sound judgment." The Random House Dictionary of the English Language, 2084 (2nd ed. 1987); *see* 1 Pa.C.S. § 1903 (words to be construed according to their common and approved usage). While a general understanding of unreasonableness is helpful, in this context, it is apparent that the General Assembly has intended the concept of unreasonableness to be a fluid one, as exemplified by the four factors set forth in Section 9781(d) to be considered in making this determination. Indeed, based upon the very factors set out in Section 9781(d), it is clear that the General Assembly intended the concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition.

[W]e decline to fashion any concrete rules as to the unreasonableness inquiry for a sentence that falls outside of applicable guidelines under Section 9781(c)(3). We are of the view, however, that the Legislature intended that considerations found in Section 9721 inform appellate review for unreasonableness. That is, while a sentence may be found to be unreasonable after review of Section 9781(d)'s four statutory factors, in addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). Moreover, even though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

*Walls*, 926 A.2d at 963–64 (some citation omitted).

*Commonwealth v. Ball*, 166 A.3d 367, 370–71 (Pa.Super. 2017).

There is no merit to Appellant's claim that the trial court failed to consider mitigating factors before imposing his sentence. The court heard statements in mitigation from the father of one of Appellant's other students and as well as from Appellant's own father. The trial court also considered Appellant's allocution in which Appellant maintained his innocence, asserted that he had spent his whole life devoted to helping people, and submitted a list of selfless acts he had done for others out of his kindness.

Defense counsel emphasized that Appellant had opened his karate studio in 2011 and had trained approximately 150 students professionally, ethically, and morally without incident. Moreover, defense counsel reiterated that Appellant has never had substance abuse issues and only had one misdemeanor conviction for furnishing alcohol to minors. Defense counsel also pointed out that the presentence investigation report indicated that Appellant may have suffered physical or sexual abuse as a juvenile from one of his mother's paramours.

Prior to announcing sentence, the trial court expressly stated on the record that it had considered the nature and gravity of the offenses, Appellant's rehabilitative needs, and the impact on the community. The trial court also indicated that it had closely reviewed the sentencing code and guidelines before it formulated Appellant's sentences. The trial court also acknowledged receiving the presentence investigation report. This Court has

held that "[w]here the sentencing judge had the benefit of a pre-sentence report, it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors. *Commonwealth v. Fullin*, 892 A.2d 843, 849–50 (Pa.Super. 2006).

The trial court emphasized that it found the nine-year-old victim's testimony to be credible and heartbreaking, considering Appellant had violated the trust of the victim, who had idolized Appellant as a role model. The trial court characterized Appellant's conduct in making the victim climb naked up a pole and spanking him as calculated actions directed at grooming the victim for sexual advances. The trial court opined that the victim, in addition to shame and pain, would have long-term effects in placing trust in adults.

Moreover, the trial court concluded that it was necessary to impose sentences in the aggravated range or outside the sentencing guidelines. The trial court remarked at Appellant's cruelty in repeatedly forcing the victim to make a choice between 10 hard spankings and 50 light spankings and disguising it as a plan of conditioning and toughening of the child. The trial court reveled at Appellant's ability to repeatedly to engage in this course of conduct despite the ramifications of his conduct on the child. Noting Appellant had been previously charged with corruption of minors and subsequently convicted of furnishing alcohol to minors, the trial court admonished Appellant for not learning from a situation in which he was punished for acting inappropriately in circumstances involving minors. Based on the foregoing

reasons, we conclude that the trial court did not abuse its discretion in imposing Appellant's sentence.

Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/20/2019