J-S48011-24

J-S48012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ROBERT LEE ADAMS | : | |
| Appellant | : | No. 1359 EDA 2024 |

Appeal from the Judgment of Sentence Entered September 26, 2023
In the Court of Common Pleas of Bucks County
Criminal Division at No: CP-09-CR-0000575-2023

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ROBERT LEE ADAMS | : | |
| Appellant | : | No. 1360 EDA 2024 |

Appeal from the Judgment of Sentence Entered September 26, 2023
In the Court of Common Pleas of Bucks County
Criminal Division at No: CP-09-CR-0001352-2023

BEFORE: STABILE, J., NICHOLS, J., and BENDER, P.J.E.

MEMORANDUM BY STABILE, J.: **FILED APRIL 21, 2025**

These appeals, which we consolidate for disposition pursuant to Pa.R.A.P. 513, arise from the same incident, and we will address them together for ease of disposition. Appellant, Robert Lee Adams, appeals from the judgments of sentence entered on September 26, 2023, by the Court of

Common Pleas of Bucks County, which imposed an aggregate term of 48 to 120 months of incarceration. Upon review, we affirm.

The trial court summarized the facts as follows:

On November 21, 2022, [Appellant] was housed in the Bucks County Correctional Facility in the restricted housing unit ("RHU") which is a two-floor unit with ten cells on each floor. [Appellant] was in cell R-15 on the second floor. As a resident of RHU, [Appellant] was not permitted to exit his cell unless he was escorted by a corrections officer. At approximately 9:30 a.m., Corrections Officer Franklin Williams ("Williams") was returning to his desk in the RHU from his lunch break. As Williams walked past [Appellant's] cell, [Appellant] asked Williams if he could speak with Williams. After completing his rounds to check the other cells, Williams returned to [Appellant] and the two exchanged words. Apparently upset by what was said to him, [Appellant] began to yell and kick his cell door, and Williams went downstairs where his desk was located.

After four or five kicks, the door to [Appellant's] cell swung open. As the door swung open, a metal bar . . . fell out of the bottom of the cell door. [Appellant] ran out of his cell, picked up the metal bar, and ran down the steps toward Williams. As he ran down the steps toward Willaims, [Appellant] held the bar in his left hand, switching it into his right hand as he leapt over a chair to attack Williams. [Appellant] never struck Williams with the metal bar; rather, after leaping over the chair and making contact with Williams while the bar remained in his hand, [Appellant] then dropped the bar on the floor and began beating Williams with his hands. Before [Appellant] reached Williams, Williams was able to call for assistance from his fellow corrections officers. As [Appellant] was kicking and punching Williams, who was on the ground, other officers came into the RHU through a secure door to assist and restrain [Appellant]. As a result of the attack, Williams suffered a sprained ankle.

One of the officers who arrived to assist Williams was [Corrections] Officer Kevin South ("South"). When South entered the RHU, he ran toward [Appellant]. According to South, as he ran at [Appellant], [Appellant] "kind of like lunged at my legs." [N.T. 6/26/23] at 62. South testified "I got flipped up. My legs

- 2 -

went up in the air and my head hit the ground." *Id.* As a result
of hitting the ground, South suffered a fractured orbital bone,
fractured sinus, and a laceration to his head.

Trial Court Opinion, 8/9/24, at 1-2 (most citations to record omitted).

Thereafter, Appellant was charged at docket number 575 CR 2023 with aggravated assault, assault by prisoner, simple assault, and related offenses. Both Williams and South were named victims. On February 2, 2023, following a preliminary hearing, the charges relating to South were dismissed. The Commonwealth refiled the charges relating to South at docket number 1352 CR 2023, which were ultimately held over to the court of common pleas.

Appellant waived his right to a jury trial and the case proceeded to a non-jury trial on June 26, 2023. In 575 CR 2023, Appellant was found guilty of two counts of aggravated assault, assault by prisoner, and simple assault related to the injuries sustained by Williams, as well as possession of an instrument of crime, resisting arrest, criminal mischief, and harassment. In 1352 CR 2023, Appellant was found guilty of simple assault related to the injuries sustained by South. Sentencing was deferred. On September 26, 2023, Appellant was sentenced in 575 CR 2023 on one aggravated assault conviction to 48 to 120 months. No further penalty was imposed on the remaining counts. In 1352 CR 2023 Appellant was sentenced to 12 to 24

months, concurrent with the sentence imposed on 575 CR 2023. This timely

appeal followed.[1]

Appellant raises two issues for our review:

1. Was there sufficient evidence to convict [Appellant] of simple assault of correctional officer South [at docket 1352 CR 2023]?

2. Did the trial court err in denying [Appellant's] motion for a mistrial, where the affiant and Commonwealth failed to turn over photographic evidence to [Appellant]?

Appellant's Brief, at 7.

We first review Appellant's challenge to the sufficiency of the evidence

supporting his simple assault conviction at docket 1352 CR 2023. Specifically,

Appellant claims that there was insufficient evidence to show that he caused

_____

[1] We note that there were procedural deficiencies in the trial court relative to the notice of appeal. On October 12, 2023, Appellant filed a *pro se* notice of appeal and post-sentence motion, which were forwarded to his attorney pursuant to Pa.R.Crim.P. 576(a)(4). The record indicates that the trial court proceeded on both the notice of appeal (issuing an order directing Appellant to file a concise statement) and post-trial motions (scheduling a hearing). The trial court denied the post-sentence motion after a hearing.

Realizing that there was a procedural defect, *i.e.*, that the *pro se* appeal was still active, Appellant filed a counseled petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. He requested the trial court to reinstate his direct appeal rights *nunc pro tunc* and averred that he would withdraw the *pro se* appeal to cure the defect. The Commonwealth agreed and the trial court reinstated Appellant's direct appeal rights on February 14, 2024, and directed Appellant to file a *nunc pro tunc* appeal within 30 days after the transcripts were filed. **See** Order, 2/14/24. The transcripts were filed on April 3, 2024, and the trial court directed Appellant to file a *nunc pro tunc* notice of appeal within 30 days. **See** Order, 4/4/24. Appellant filed his *nunc pro tunc* notice of appeal on May 3, 2024, which the trial court deemed timely. **See** Order 4/4/24.

- 4 -

bodily injury to South. Appellant's Brief, at 13. He contends that South caused his own injuries. *Id.*

> Our standard of review is
>
> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019) (citation omitted).

Appellant was convicted under subsection (a)(1) of the simple assault statute, which reads: "[A] person is guilty of assault if he [or she] attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301 (definitions). A person "acts intentionally . . . when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S.A. § 302(b)(1)(i). A person "acts knowingly . . . when . . . he is aware

that it is practically certain that his conduct will cause such a result." 18

Pa.C.S.A. § 302(b)(2)(ii). Finally,

> [a] person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

Here, there is no dispute that South suffered bodily injury as he fractured his orbital bone and sinus and had a laceration on his head. The crux of Appellant's argument is that South was injured when he tripped while assisting Williams; therefore, he did not cause the injuries. This argument is meritless.

Surveillance video captured most of the incident; there is a portion that is off-screen. The video showed Appellant running down the stairs toward Williams with the metal pipe held above his head. *See* N.T. Trial, 6/26/23, Commonwealth's Exhibit C-5. Williams stood up and called for assistance on his radio. *Id.* Appellant leaped over a chair and attacked Williams. *Id.* The video showed Williams on his back with Appellant on top of him, fighting and punching. *Id.* South was the first officer on scene to assist. He ran towards Williams and Appellant on the ground. *Id.* As South approached, Appellant stood up, then crouched down into a football stance and lunged at South's legs, causing him to fall to the ground and hit his head. *Id.*

Appellant's argument focuses on two internal reports of the incident. First, a memo written by a Linda Ricci, a registered nurse, which references that South "tripped over inmate [Appellant]." **See** N.T. Trial, 6/26/23, Defense Exhibit D-2. Second, an incident report written by South noted that he "fell on the ground" while attempting to restrain Appellant. **See** N.T. Trial, 6/26/23, Defense Exhibit D-3. The characterization of how South was injured in these reports is of no moment. South testified that Appellant "kind of like lunged at my legs" and "I got flipped up. My legs went up in the air and my head hit the ground." N.T. Trial, 6/26/23, at 62. The surveillance video corroborated South's testimony.

Thus, the evidence demonstrates that Appellant at least acted intentionally, in that he consciously engaged in conduct designed to cause harm to South, and he acted knowingly by crouching down in a football stance to lunge at South. This conduct, that occurred during Appellant's assault on Williams, was designed to cause harm to South and prevent him from rendering aid to Williams from Appellant's assault. Accordingly, no relief is due.

Appellant's second issue is that the trial court erred when it denied Appellant's motion for a mistrial. During cross-examination of the affiant, Investigator Anthony DiSandro, defense counsel asked a series of questions related to a photograph of Appellant's facial injuries following the incident. N.T. Trial, 6/26/23, at 105-09. Investigator DiSanto testified that two days

after the incident, on November 23, 2022, he interviewed Appellant as part of his investigation. *Id.* at 104-05. Appellant advised that he was injured during the attack and asked Investigator DiSandro to photograph his injuries. *Id.* at 108-09. Inexplicably, the photograph was not put into the case file or turned over to the district attorney's office. *Id.* at 110-11.

At the end of the non-jury trial, defense counsel moved for a mistrial based upon a discovery violation, *i.e.*, that the Commonwealth failed to turn over the photograph of Appellant's injuries. *Id.* at 114. After a sidebar discussion, the trial court denied Appellant's request for mistrial. *Id.* at 120.

Our standard of review of a denial of a motion for mistrial is an abuse of discretion:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial.

*Commonwealth v. Bennett*, 225 A.3d 883, 890 (Pa. Super. 2019) (citation omitted). Pretrial discovery of evidence is governed by Rule of Criminal Procedure 573, which sets forth, in part, the mandatory disclosure of certain items. Relevant to this appeal, the Rule requires the Commonwealth to disclose "any tangible objects, including documents, photographs, fingerprints, or other tangible evidence." Pa.R.Crim.P. 573(B)(1)(f). The Rule further provides a remedy for a violation:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E). "The trial court has broad discretion in choosing the appropriate remedy for a discovery violation." *Commonwealth v. Jones*, 668 A.2d 491, 507 (Pa. 1995) (citation omitted). "A defendant seeking relief from the discovery violation must demonstrate prejudice in order to be entitled to a new trial." *Id.*

Here, the trial court denied Appellant's request for a mistrial based upon a discovery violation because the photograph was not relevant and there was no prejudice to Appellant:

Here, not only do we believe the potential evidence was not exculpatory, we are not even sure it would have been admissible. We do not believe a photograph of a bruise on [Appellant's] face, allegedly caused as a result of [Appellant's] violent attack on Williams was relevant to [Appellant's] guilt or innocence. . . . Based on the testimony and evidence presented in the courtroom, we did not believe there was any prejudice to [Appellant] and denied the motion for mistrial accordingly.

Trial Court Opinion, 8/9/24, at 13.

We discern no abuse of discretion. At trial, defense counsel argued that a mistrial should be granted because "the defense never had [the photograph]" and could not "use it in any way to talk – to discuss it with my client" or "use it as an exhibit in this case." N.T. Trial, 6/26/23, at 115. Further, he argued that not having the photograph "permeate[d] the entire

- 9 -

defense" because he could not "cross-examine Officer South and Officer Williams now with a photograph I never had" and could not "open to the court with a photograph I never had." *Id.* at 117. In his brief[2] to this Court, Appellant argued that he was "deprived of the opportunity to determine the relative value of" the photograph." Appellant's Brief, at 14.

Appellant fails to demonstrate how not having a photograph of his injury prejudiced his case. He did not argue self-defense, nor did he assert that Williams and/or South instigated the attack. Moreover, Williams and South testified in detail about Appellant's attack, and the surveillance video corroborated their testimony. Accordingly, the trial court did not abuse its discretion when it denied Appellant's request for a mistrial based upon a discovery violation.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/21/2025

_____

[2] We caution counsel that our appellate rules require the argument section "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point therein[.]" Pa.R.A.P. 2119(a). Appellant raised two issues for our review, yet his argument only contains one part, in violation of the Rule.